## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| EUCALYPTUS | § | |
| REAL ESTATE, LLC, | § | |
| | § | Civil Action No. |
| Plaintiff, | § | |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| LRS SOUTH, LLC, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff, EUCALYPTUS REAL ESTATE, LLC ("Eucalyptus"), and for its action against Defendant, LRS SOUTH, LLC ("LRS"), files its Complaint (the "Complaint") and respectfully shows the Court as follows:

## JURY DEMAND

1.    Plaintiff respectfully demands trial by jury pursuant to FED.R.CIV.P. 38.

## PARTIES

2.    Plaintiff, Eucalyptus, at all times relevant hereto is a foreign, limited liability company formed in Oklahoma, whose principal place of business is 1200 Sovereign Row, Oklahoma City, Oklahoma 73108 and may be served with process at its registered agent for service, Megan McGinnis, 5323 East Harry Street, Wichita, Kansas 67218.

3.    Defendant, LRS South, LLC ("LRS"), at all times relevant hereto is a foreign, limited liability company formed in Delaware, whose principal place of

business is 5500 Pearl Street, Suite 300, Alden, IL 60018. LRS may be served with process at its registered agent service, Corporation Service Company, 1100 SW Wanamaker Road, Suite 103, Topeka, Kansas 66604.

## JURISDICTION AND VENUE

4.      This Court has original diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000 due to the unexpected and immediately inflated costs Eucalyptus has incurred mitigating LRS's intentional contractual breach. The unprecedented and large-scale number of waste removal replacement containers, logistical resources to marshal them and a veritable army of Eucalyptus employees and non-Eucalyptus employee reserves required to accomplish remediation and abate what amounts to a minor health crisis engineered by LRS are significant. Additionally, complete diversity of citizenship between Eucalyptus and LRS also exists in this action.

5.      This Court has both general and specific jurisdiction over Defendant, LRS, in that it has been and is currently licensed to conduct business in the State of Kansas. LRS maintains agents and offices at 711 ½ NE US 24 HWY, Topeka, KS 66608. Moreover, LRS purposefully engaged and directed its business activities at Eucalyptus, which is also a licensed business in the State of Kansas, by causing waste removal service contracts to be issued by mail and/or otherwise electronic means of delivery.

6.    Venue in this Court remains proper in that a substantial portion of the acts or omissions giving rise to Eucalyptus's claims against LRS occurred within this judicial district in the State of Kansas.

## FACTUAL BACKGROUND

7.   Eucalyptus reasserts, repleads and realleges the factual allegations set forth in paragraphs 1 through 6 as if fully set forth herein.

8.   Eucalyptus manages a number of multi-family residential properties in the State of Kansas.

9.   On September 20, 2018, Eucalyptus entered into written contracts for waste removal services in Topeka which were subsequently purchased and assumed by LRS. This contract is representative and substantially similar to the approximately forty (40) separate and enforceable contracts entered by Eucalyptus for individual residential housing communities. A copy of this contract, marked as Exhibit 1, *"Contract,"* is attached and made a part of this Complaint for reference and (hereafter will be referred to as the "Contract").

10.  In April 2021, LRS purchased Orion Waste Solutions Territory, and acquired local, Topeka independent trash removal company, Ditch & Associates which had been providing trash and waste removal services per contracts entered with Eucalyptus.

11. Following the LRS takeover, the LRS Accounting Department, based at their Bethel Heights, Arkansas headquarters, has operated in a fractured, free-wheeling fashion and without the necessary due diligence to assure Eucalyptus, and numerous other customers, of the following: (1) That monthly invoices are

accurate, developing the customer confidence that LRS bills reflect was agreed to contractually; (2) That checks remitted by Eucalyptus for payment are properly reconciled and attributed to the correct Eucalyptus accounts; and (3) LRS has consistently failed to adhere to the pricing and contractually negotiated line-item cost terms under existing Eucalyptus contracts.

12.    LRS has continually shirked its accurate accounting and record-keeping duties. This has put the onus on Eucalyptus and its employees to keep detailed records and all canceled checks in order to prove that in fact each monthly payment has been made according to contractually agreed amounts as requested by LRS.

13.    Eucalyptus routinely paid each monthly invoice by check and remitted these checks to LRS's preferred payment lockbox in Arkansas. However as recently as November 2024, LRS's incorrect accounting and billing practices still resulted in an LRS Accounting Department request that Eucalyptus remit payment for monthly invoices be made out to "Orion." Despite LRS operating as a wholly owned and separate business entity from Orion since 2021.

14.    Trash and waste removal per the terms of the Contract were conducted without incident until LRS assumed the contacts in 2021, following which Eucalyptus began to suffer from LRS's deleterious accounting, undisciplined record-keeping, and haphazard billing practices.

15.    On or about the week of Thanksgiving, November 24, 2024, LRS stopped picking up trash at all of the Eucalyptus managed properties.

16.    Eucalyptus management immediately contacted LRS's local Topeka

office with the knowledge of this potential problem at multiple Eucalyptus properties, which continued through December 2024.

17. LRS did not resume trash collection despite multiple, said demands.

18. LRS had already been paid through at least November 2024 to perform these trash collection services when those services were halted.

19. On Friday, December 6, 2024, Eucalyptus contacted LRS to demand LRS resume services at which time LRS falsely stated that trash service had been stopped due to non-payment of service invoices.

20. On Tuesday, December 10, 2024, Eucalyptus again unsuccessfully attempted to contact LRS regarding the growing, missed trash pick-ups at Eucalyptus properties.

21. On Wednesday, December 11, 2024, Eucalyptus again demanded that LRS resume trash pick-ups in Topeka immediately and LRS did not comply.

22. On Friday, December 13, 2024, LRS finally contacted Eucalyptus and advised that service had been "discontinued" at all Eucalyptus properties around the week of Thanksgiving 2024 "due to Eucalyptus's lack of payment of outstanding monthly invoices" despite the fact that all invoices had been paid through November 2024.Eucalyptus also demanded that LRS immediately resume trash pick-ups at Eucalyptus properties in an attempt to cure its intentional breach as well as to begin mitigating any current damage to Eucalyptus and to provide proof of any unpaid invoices, both of which LRS refused.

23. Eucalyptus notified LRS in writing that LRS was in breach of multiple contracts and that these willful actions by LRS were unacceptable to Eucalyptus.

24.  On Wednesday, December 17, 2024, Eucalyptus sent official, written correspondence to LRS via email to Mr. Goodwin and U.S. Certified Mail to its Kansas Registered Agent, Corporation Service Company in Topeka that Eucalyptus was terminating all Eucalyptus - LRS contracts for waste removal. This termination was effective as of December 18, 2024. This Notice of Termination provided that LRS had five (5) days from the date of the letter to remove all LRS waste receptacles including the trash therein from Eucalyptus properties. After these five (5) days elapsed, any LRS property that remained would be removed by Eucalyptus or a third-party vendor and stored for thirty (30) days with LRS bearing the responsibility for this storage. After the expiration of these thirty (30) days, any remaining property left in storage would become the property of Eucalyptus or the storage vendor to dispose of as they saw fit. LRS had removed substantially all of its property by the expiration of these five (5) days. As of December 28, 2024, all LRS waste receptacles had been removed from Eucalyptus properties.

24.  Eucalyptus has suffered and continues to suffer substantial monetary damages because of LRS's intentional breach.

25.  Eucalyptus has been forced to remediate LRS's contractual failures, which were both intentional and malicious.

26.  LRS acted in retaliation against Eucalyptus intending to harm Eucalyptus financially as well as damage Eucalyptus's business reputation because Eucalyptus was contemplating moving their waste removal needs to another vendor.

27. Eucalyptus had become increasingly dissatisfied with LRS's level of service on multiple levels from the consistency of how refuse was collected and removed to LRS's deleterious and inaccurate accounting and billing.

28. LRS has attempted to intentionally destroy Eucalyptus's Topeka and Junction City business and community standing, while still under contract with Eucalyptus before, in the words of one LRS executive, "Eucalyptus destroyed theirs."

29. LRS has breached approximately forty (40) separate and enforceable contracts with Eucalyptus, including but not limited to current, holdover, and existing month-to-month contractual agreements through its willful nonperformance of the same with Eucalyptus managed LLC's.

30. LRS has engaged in anticipatory breach and acted with both malicious intent and arbitrary and unreasonable conduct in willfully choosing to violate both the contracts and the covenant of good faith and fair dealing implied by these contracts.

31. LRS has engaged in a continued, systematic breach of the covenant of good faith and fair dealing while under contract with Eucalyptus by its intentional disregard of its contractual duties, haphazard record-keeping and its brazen ignorance of accepted accounting and billing principles.

32. LRS agents and employees have continually prepared inaccurate monthly invoices since approximately April 2021.

34. LRS has expressly and intentionally chosen to breach this series of Eucalyptus contractual agreements while also making untrue and defamatory

comments about Eucalyptus's alleged failure to pay its current and past LRS bills and has circulated those untrue and defamatory allegations community wide.

35.    LRS has slandered Eucalyptus's standing and damaged its business reputation as a management company in Topeka.

36.    LRS has been unjustly enriched at Eucalyptus expense by not performing its contractual duties in November and December 2024 despite already having been paid to do so through at least November 2024.

37.     LRS breach of contract has caused the City of Topeka to issue approximately twenty-six (26) separate municipal code violations to Eucalyptus the week before Christmas in December 2024 and three (3) subsequent abatement citations were issued on or about December 31, 2024.

38.    LRS's actions in causing these violations have caused Eucalyptus to incur substantial costs in the immediate mitigation of refuse removal both in labor costs and in contracting with a new waste removal vendor.

39.    The relationship between Eucalyptus and the residents of the residential communities managed by Eucalyptus have been damaged by LRS's actions.

40.    LRS has falsely published and spoken in the community that Eucalyptus has failed to pay current and past LRS invoices as far back as 2021, even though Eucalyptus has continually paid each LRS monthly invoice under the corresponding contract through at least November 2024.

41.    LRS's allegations have been made with the actual and constructive knowledge of their falsity and with malice aforethought.

## CLAIMS

### a.      Breach of Contract

42.    Plaintiff reasserts, repleads and realleges the factual allegations set for in paragraphs 8 through 41 as if fully set forth herein.

43.    LRS assumed contracts with Eucalyptus under which LRS was to provide trash and waste removal services at all Eucalyptus properties and those contracts remain valid and enforceable agreements between the parties.

44.    LRS had a duty to perform waste removal from Eucalyptus properties and it failed willfully on multiple occasions in November and December 2024 to do so.

45.    Eucalyptus was unjustifiably and recklessly denied performance by LRS, and this nonperformance remains open, malicious, and unjustifiably hostile to Eucalyptus.

46.    The accumulation and unsafe overflow of trash caused unsanitary conditions at approximately forty (40) Eucalyptus properties throughout Topeka, which was both avoidable and preventable.

47.    Eucalyptus has been injured as a result by this non-performance of contractual obligations due to LRS's breach and LRS's breach has caused Eucalyptus damages consisting of the Defendant committing its acts or omissions intentionally and/or knowingly in the process.

48.    Eucalyptus has been criminally cited by the City of Topeka due to LRS's breach.

49.     LRS's malicious acts, omissions, and/or deleterious practices are a producing cause of actual damages for Eucalyptus.

**b.     Anticipatory Breach**

50.     Plaintiff reasserts, repleads and realleges the factual allegations set for in paragraphs 42 through 49 as if fully set forth herein.

51.     Eucalyptus received no formal notice from LRS that it was "discontinuing" waste removal service to Eucalyptus's Topeka properties the week of Thanksgiving, November 24, 2024.

52.     No notice of any kind came from LRS until December 13, 2024, that LRS was not going to perform its contractual obligations.

53.     Due to the breach by LRS, Eucalyptus sought potential remedies in early December to mitigate the damages and the negative consequences brought about by LRS's willful breach.

54.     On Wednesday, December 4, 2024, LRS contacted Eucalyptus to complain about Eucalyptus' retention of an alternative waste removal vendor clarifying that LRS was acting in retaliation.

55.     At all relevant times, LRS was under contract with Eucalyptus, but had not performed or exhibited any actions in furtherance of curing its failure to remove waste from Eucalyptus properties since before Thanksgiving Day, November 28, 2024.

**c.     Defamation and Slander**

56.     Plaintiff reasserts, repleads and realleges the factual allegations set for in paragraphs 50 through 55 as if fully set forth herein.

57.    LRS has maliciously and recklessly engaged in making harmful and untrue statements regarding Eucalyptus as defined by K.S.A. § 40-2404.

58.    LRS has intentionally spread into the community that it suspended its waste management services to Eucalyptus because of a failure to pay which has harmed Eucalyptus and its business reputation.

59.    LRS has willfully made derogatory statements about Eucalyptus alleging they are owed money by Eucalyptus and those statements have been made in reckless disregard as to their truth of falsity and for the purpose of damaging Eucalyptus' reputation in the community.

60.    Despite spreading lies regarding Eucalyptus, LRS has refused to provide an accounting of all invoices and payments.

61.    LRS's statements are an untruthful attempt to deflect blame for breaching contracts with Eucalyptus, these allegations have been materially damaging to Eucalyptus and its reputation, and those statements were made with actual malice.

**d.    Exemplary Damages**

62.    Plaintiff reasserts, repleads and realleges the factual allegations set for in paragraphs 56 through 61 as fully set forth herein.

63.    Eucalyptus's damages resulted from both LRS's willful and malicious defamation, which entitles Eucalyptus to exemplary damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Eucalyptus Real Estate, LLC prays that the Court finds this Complaint well plead and causes the issuance of summons compelling Defendant, LRS South, LLC to answer and

appear, thereby granting Eucalyptus a trial by jury, and further grants relief as follows:

       a.   Economic/Actual damages;

       b.   Consequential damages;

       c.   Treble damages;

       d.   Punitive damages;

       e.   Exemplary damages;

       f.   Prejudgment and post-judgment interest;

       g.   Court costs;

       h.   Attorney's fees; and

       i.   All other relief to which Plaintiff, Eucalyptus, is entitled.

Dated: December 31, 2024.

Respectfully submitted,

   /s/ Meredith Monaco
MEREDITH MONACO, KS BAR NO. 26918
Counsel for Eucalyptus Real Estate, LLC
1200 Sovereign Row
Oklahoma City, OK 73108
Telephone: 405.639.2180 Ext. 125
mcginnismonaco@gmail.com