# EXHIBIT 1



**INLAND WASTE SOLUTIONS, LLC**
711 1/2 NE US 24 Highway
Topeka, Kansas 66608
(785) 232-9168

## SERVICE AGREEMENT

MASTER ACCOUNT NUMBER: _____   ACCOUNT NUMBER: _____

**INVOICE TO:**   **SERVICE LOCATION:**

CUSTOMER NAME: Eucalyptus Real Estate Kensington Apts

LOCATION NAME: Kensington Apartments

ADDRESS: 1300 Soverign Row   ADDRESS: 2937 SW McClure Rd

CITY: Oklahoma City   ST: OK   ZIP: 93108

PHONE: 405-210-8857   FAX: _____   CITY: Topeka   ST: Ks   ZIP: 66614

CONTACT: Lew McGinnis   PHONE: _____   FAX: _____

EMAIL: lewmcginnis@generalproperties.net   CONTACT: _____

☐ NEW SERVICE   ☐ SERVICE CHANGE   ☐ NEW LOCATION / EXISTING SERVICE   ☐ TEMPORARY

| QUANTITY | SIZE | WASTE TYPE | FREQUENCY | EFFECTIVE DATE | QUANTITY | SIZE | WASTE TYPE | FREQUENCY |
|---|---|---|---|---|---|---|---|---|
| 2 | 8 | msw | 1 | 9-20-18 | | | | |
| | | | | | | | | |
| | | | | | | | | |

COMMENTS: no fuel, administrative, or environmental fees. See Attachments 1 & 2

**CHARGES:**

| MONTHLY SERVICE CHARGE | HAULING CHARGE PER COLLECTION | EQUIPMENT RENTAL CHARGE PER MONTH | DELIVERY / RELOCATE FEE | EXTRA SERVICE FEE PER COLLECTION |
|---|---|---|---|---|
| $215.00 | n/a | n/a | n/a | $80.00 |

Inland is not responsible for property damages beyond the curb line, including articles in or around the containers. No hazardous or special waste is permitted.   SEE ATTACHMENT I & II

This Agreement shall continue in effect for a period of (5 years) sixty months from the date hereof and thereafter shall be automatically renewed unless a written notice of termination is provided by either party not less than ninety (90) days prior to the expiration of the contract.

See the attached Collection Service Agreement Terms And Conditions which are incorporated herein by reference and which are included as part of this Agreement. By signing this Agreement, you acknowledge that you have read, understood and agree to the terms herein.

CUSTOMER SIGNATURE: _____ TITLE: manjr
(Authorized Signature)

COMPANY SIGNATURE: _____ DATE: _____
(Authorized Signature)

CREDIT APPROVAL: _____   CONTRACT APPROVAL: _____

## SERVICE AGREEMENT— NON-HAZARDOUS MATERIALS

ATTACHMENT I

### Collection Service Agreement Terms And Conditions

1. **SERVICES RENDERED; WASTE MATERIALS.** Customer grants to Company the exclusive right, and Company shall furnish equipment and services, to collect and dispose of and/or recycle all of Customer's Waste Materials. Customer represents and warrants that the materials to be collected under this shall be only "Waste Materials" as defined herein. For purposes of this Agreement, "Waste Materials" means all non-hazardous putrescible and nonputrescible solid waste and recyclable materials generated by Customer or at Customer's Service Address. Special Waste, such as industrial process wastes, asbestos containing material, petroleum contaminated soils, and treated/decharacterized wastes require a completed Customer Waste Profile for such Special Waste which has been approved by Company in writing prior to disposal. Waste Materials specifically excludes, and Customer agrees not to deposit or permit the deposit for collection of, any radioactive, volatile, corrosive, flammable, explosive, biomedical, infectious, biohazardous, regulated medical or hazardous waste, toxic substance or material, as defined by, characterized or listed under applicable federal, state, or local laws or regulations, or Special Waste not approved in writing by Company (collectively, "Excluded Materials"). Title to and liability for Excluded Material shall remain with Customer at all times.

2. **TERM.** The initial term ("Term") of this Agreement is 5 years (60) months from the Effective Date set forth above ("Initial Term"). This Agreement shall automatically renew thereafter for additional terms of 1 year (12) months each ("Renewal Term") unless either party gives to the other party written notice (See Section 9) of termination at least ninety (90) days, but not more than one hundred eighty (180) days, prior to the termination of the then-existing term.

3. **CHARGES; PAYMENTS; ADJUSTMENTS.** Customer shall pay for the services and/or equipment (including repair and maintenance) furnished by Company in accordance with the charges on the reverse side, as adjusted hereunder, within ten (10) days of the date of Company's invoice. Customer shall pay a service charge on all past due amounts accruing from the date of the invoice at a rate of eighteen percent (18%) per annum or, if less, the maximum rate allowed by law. Company may increase the charges to account for: any increase in disposal, fuel or transportation costs; any change in the composition of the Waste Materials or increases in the average weight per container of Waste Materials; increased costs due to uncontrollable circumstances, including, without limitation, changes in local, state or federal laws or regulations, imposition of taxes, fees or surcharges and acts of God such as floods, fires, etc. Company may also increase the charges to reflect increases in the Consumer Price Index for the municipal or regional area in which the Service Address is located. Increases in charges for reasons other than as provided above require the consent of Customer which may be evidenced verbally, in writing or by the actions and practices of the parties.

4. **CHANGES.** Changes in the frequency of collection service, schedule, number, capacity and/or type of equipment may be agreed to orally, in writing, or by the actions and practices of the parties.

5. **EQUIPMENT, ACCESS.** All equipment furnished by Company shall remain the property of Company; however, Customer shall have care, custody and control of the equipment and shall bear responsibility and liability for all loss or damage to the equipment and for its contents while at Customer's location. Customer shall not overload, move or alter the equipment and shall use the equipment only for its intended purpose. At the termination of this Agreement, Customer shall return the equipment to Company in the condition in which it was provided, normal wear and tear excepted. Customer shall provide unobstructed access to the equipment on the scheduled collection day. Customer shall pay, if charged by Company, an additional fee for any service modifications caused by or resulting from Customer's failure to provide access. Company shall not be responsible for any damage to Customer's property, including pavement, subsurface or curbing, resulting from Company's provision of services hereunder. Customer warrants that Customer's right of way is sufficient to bear the weight of Company's equipment and vehicles.

6. **LIQUIDATED DAMAGES.** In the event Customer terminates this Agreement prior to the expiration of any term for any reason other than a default by Company, or in the event Company terminates this Agreement for Customer's default, Customer shall pay the following liquidated damages in addition to the Company's legal fees: 1) if the remaining Initial Term under this Agreement is six or more months, Customer shall pay its most recent monthly charges multiplied by six; 2) if the remaining Initial Term under this Agreement is less than six months, Customer shall pay its most recent monthly charges multiplied by the number of months remaining in the Term. Customer acknowledges that the actual damage to Company in the event of termination is difficult to fix or prove, and the foregoing liquidated damages amount is reasonable and commensurate with the anticipated loss to Company resulting from such termination and is an agreed upon fee and is not imposed as a penalty. Company shall not be liable under any circumstances for any special, incidental or consequential damages arising out of or in connection with performance of this Agreement.

7. **INDEMNITY.** The Company agrees to indemnify, defend and save Customer harmless from and against any and all liability which Customer may be responsible for or pay out as a result of bodily injuries (including death), property damage, or any violation or alleged violation of law, to the extent caused by any negligent act, negligent omission or willful misconduct of the Company or its employees, which occurs (1) during the collection or transportation of Customer's Waste Materials, or (2) as a result of the disposal of Customer's Waste Materials, provided that the Company's indemnification obligations will not apply to occurrences involving Excluded Materials. Customer agrees to indemnify, defend and save the Company harmless from and against any and all liability which the Company may be responsible for or pay out as a result of bodily injuries (including death), property damage, or any violation or alleged violation of law to the extent caused by Customer's breach of this Agreement or by any negligent act, negligent omission or willful misconduct of the Customer or its employees, agents or contractors in the performance of this Agreement or Customer's use, operation or possession of any equipment furnished by the Company. Neither party shall be liable to the other for consequential, incidental or punitive damages arising out of the performance of this Agreement.

8. **RIGHT OF FIRST REFUSAL.** Customer grants to Company a right of first refusal to match any offer relating to services similar to those provided hereunder which Customer receives (or intends to make) upon termination of this Agreement for any reason and Customer shall give Company prompt written notice of any such offer and a reasonable opportunity to respond to it.

9. **MISCELLANEOUS.** (a) Except for the obligation to make payments hereunder, neither party shall be in default for its failure to perform or delay in performance caused by events beyond its reasonable control, including, but not limited to, strikes, riots, imposition of laws or governmental orders, fires, acts of God, and inability to obtain equipment, and the affected party shall be excused from performance during the occurrence of such events; (b) This Agreement shall be binding on and shall inure to the benefit of the parties hereto and their respective successors and assigns; (c) This Agreement represents the entire agreement between the parties and supersedes any and all other agreements, whether written or oral, that may exist between the parties; (d) This Agreement shall be construed in accordance with the law of the state in which the services are provided; and (e) All written notification required by this Agreement shall be by Certified Mail, Return Receipt Requested. If any provision of this Agreement is declared invalid or unenforceable, then such provision shall be severed from and shall not affect the remainder of this Agreement; however, the parties shall amend this Agreement to give effect, to the maximum extent allowed, to the intent and meaning of the severed provision. In the event the Company successfully enforces its rights against Customer hereunder, the Customer shall be required to pay the Company's attorneys' fees and court costs.

See attachments I and II, made a part of this agreement. The customer will be the name of the entity on each Service Agreement.

Inland Waste Solutions Service Agreement - **Attachment II**

2. TERM: The term of this agreement shall be 60 months, commencing on 9-20-18. Furthermore the agreement shall be assignable.

3. PAYMENTS: The payment for services shall be rendered within 15 days of the date of the company's invoice. In the event the company does not receive payment, the company shall immediately notify the customer in writing and payment shall be received in 5 business days thereafter, or the customer shall be in default of the contract and subject to an interest rate of 18% and any collection charges incurred therewith.

TERMINATION OF CONTRACTS: If the customer provides to the company that the services are not adequate and outlines the area that the customer interprets to be a breach of this agreement, the company will have 10 business days to correct the breach. If the company fails to do so, at the customers option, the contract can be canceled and the company will immediately remove their equipment from the premises.

Lew,

I received your email and everything looks great. This agreement is for the properties here in Topeka, Ks that we will start servicing 9-20-18

Both parties will evaluate the price increase on the 2,3, and 4th year of the anniversary date not to exceed 3% and will provide supporting documentation for any agreed price increase.

Peter Ritchey
Lew McGinnis